UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CAROLYN GOODMAN,

     Plaintiff,

v.                               Case No:  2:17-cv-457-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Before the Court is Plaintiff Carolyn Goodman's Complaint, filed on August 9, 2017.

(Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying her claim for a period of disability and disability

insurance benefits and supplemental security income. The Commissioner filed the Transcript of

the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and

the parties filed a joint legal memorandum detailing their respective positions. For the reasons

set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On March 27, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income.  (Tr. at 99, 107, 238-39, 240-50).  Plaintiff asserted an onset date of June 29, 2004, but later amended it to April 10, 2011.  (*Id.* at 41, 62, 238).  Plaintiff's applications were denied initially on April 23, 2012 and on reconsideration on July 16, 2012.  (*Id.* at 99, 107,116, 129).  A hearing was held before Administrative Law Judge ("ALJ") James G. Myles on January 9, 2015.  (*Id.* at 57-89).  The ALJ issued an unfavorable decision on February 20, 2015.  (*Id.* at 41-51).  The ALJ found Plaintiff not to be under a disability from April 10, 2011, through the date of the decision.  (*Id.* at 51).

On July 29, 2016, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6).  Plaintiff requested and received an extension of time to file a civil action.  (*Id.* at 9, 12).  Plaintiff filed a Complaint in the United States District Court on August 9, 2017.  (Doc. 1).  This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 16).

### C.      Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment;

(3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform

other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-

40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden

shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913,

915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31,

2011. (Tr. at 43). At step one of the sequential evaluation, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since April 10, 2011, the alleged amended onset date.

(*Id.*). At step two, the ALJ determined that Plaintiff suffered from the following severe

impairments: "coronary artery disease, plantar fasciitis, and obesity (20 [C.F.R §§] 404.1520(c)

and 416.920(c))." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id*. at 45).

At step four, the ALJ found the following:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 [C.F.R. §§]
> 404.1567(b) and 416.967(b) except that the claimant is limited to standing/walking
> for 30 minutes at a time, and after 30 minutes, she should be given the opportunity
> to sit and rest for two minutes, or given the option to work seated. Additionally,

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not
rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January
1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be
cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

the claimant should only occasionally climb ladders, ropes[,] or scaffolds, but she may frequently perform other postural activities. Moreover, the claimant is further limited to mostly oral or low-level written instructions, and she should have no concentrated exposure to pulmonary irritants or hazards.

(Tr. at 45-46).

The ALJ determined that Plaintiff was capable of performing her past relevant work as a cleaner/housekeeper as Plaintiff actually performed it and as it is generally performed in the national economy. (*Id.* at 49-50). Alternatively, the ALJ also considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 50). The ALJ noted that the vocational expert identified the following representative occupations that Plaintiff was able to perform: (1) assembler arranger, DOT # 739.687-010, light, unskilled, SVP 2; (2) folder, DOT # 369.687-018, unskilled, light, SVP 2; and (3) inspector/hand packager, DOT # 559.687-074, light, SVP 2. (*Id.* at 51).[2] The ALJ concluded that Plaintiff was not under a disability from April 10, 2011, through the date of the decision. (*Id.*).

**D.    Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     Analysis

On appeal, Plaintiff raises three issues. As stated by the parties, they are:

(1)     Whether substantial evidence supports the RFC finding.

(2)     Whether substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairments.

(3)     Whether the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence, as required by 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.

(Doc. 21 at 13, 21, 25). The Court addresses these issues in turn.

### A.     Whether Substantial Evidence Supports the RFC Finding

Plaintiff argues that the RFC assessment fails to adequately consider Plaintiff's need for a handheld assistive device. (Doc. 21 at 14). Further, Plaintiff contends that the ALJ erred by finding Plaintiff's hypertension to be a non-severe impairment and, as a consequence, did not include any limitations related to this impairment in the RFC. (*Id.* at 15). Plaintiff also argues that the ALJ should have considered Plaintiff's hypertension whether or not Plaintiff complied

with taking her medications for her hypertension, especially in light of Plaintiff's occasional inability to afford her medications. (*Id.* at 15-16).

The Commissioner argues that the ALJ properly determined Plaintiff's RFC after considering the entire record and properly determined that the use of a cane was not medically necessary. (*Id.* at 17, 20). The Commissioner also argues that the ALJ correctly noted that Plaintiff was noncompliant with her medical treatment. (*Id.* at 18-19). Further, the Commissioner contends that the record does not show that Plaintiff's hypertension caused work-related limitations. (*Id.*).

### 1. Legal Standard

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The Court addresses the issue concerning the use of an assistive device to ambulate and then turns to the issues concerning hypertension.

## 2.  Use of an Assistive Device to Ambulate

Plaintiff claims that the RFC assessment fails to adequately consider Plaintiff's need to use a handheld assistive device, which in this case is a cane.  (Doc. 21 at 14).  Plaintiff cites to instances where she was in the hospital or was present at medical appointments using a cane. (*Id.* at 21 (citing Tr. at 945-46, 947-51, 997-98, 1020)).  Plaintiff asserts that the "ALJ acknowledged in the decision that Plaintiff needed to use a cane at various medical appointments," and Plaintiff argues that the ALJ erred in failing to include a limitation in the RFC regarding the use of a cane.  (Doc. 21 at 14-15 (citing Tr. at 47, 48)).

The medical records do indicate that Plaintiff occasionally arrived at the hospital or for medical appointments using a cane, but during these visits, the medical records do not indicate a prescription for use of a cane, nor does Plaintiff cite to any medical provider who prescribed the use of a cane for Plaintiff.  (*See* Tr. at 945-46, 947-51, 997-98, 1020).  On October 20, 2012, Plaintiff arrived at the hospital complaining of knee pain and the notes state, "[a]t times, [Plaintiff] uses her boyfriend's cane to ambulate."  (Tr. at 945).  Upon examination, the medical provider found tenderness at the knee with increased pain with flexion, but no instability.  (*Id.*). The medical provider wrapped her knee in an Ace wrap and prescribed anti-inflammatories.  (*Id.* at 946).

Again, on November 30, 2012, at the hospital, Plaintiff complained of left knee pain and she said she had been using a cane due to difficulty walking.  (*Id.* at 951).  On examination, Plaintiff had tenderness, but had full range of motion, no pain with varus or valgus range of motion or flexion and extension, and no appreciable edema or effusion.  (*Id.* at 951-52).  The nurse discharged Plaintiff with a change in prescriptions for her knee.  (*Id.* at 952).  On April 4,

2014, Plaintiff visited her physician and the physician noted that Plaintiff "[u]ses a cane for ambulation." (*Id.* at 997). Upon exam, the doctor found Plaintiff in no distress. (*Id.*).

On November 13, 2014, Plaintiff visited her doctor complaining of new onset intermittent edema of the right foot. (*Id.* at 1020). Plaintiff reported to her doctor that "she needs to ambulate with a cane or pushes a cart when walking distances, due to feelings of imbalance." (*Id.* at 1020-1021). Upon examination, the medical provider found no edema in either foot, and normal range of motion. (*Id.* at 1021).

These medical records show that Plaintiff occasionally used a cane. However, Plaintiff failed to cite to any medical records that show a cane was prescribed or required for Plaintiff to ambulate. Thus, the objective medical records do not support a need for a cane.

Even though the ALJ did not include a limitation for use of an ambulatory device, he mentioned that Plaintiff was observed using a cane due to her reported difficulty walking. (*Id.* at 47). The ALJ also noted that Plaintiff reported using a cane to help with balance, but an examination showed no balance disturbance. (*Id.* at 48). More importantly, when questioning the vocational expert, the ALJ included an additional limitation in the hypothetical that this individual would need a short rest break or an option to work seated. (*Id.* at 85). For jobs other than Plaintiff's past relevant work – namely assembler arranger, folder, inspector/hand packager – the vocational expert testified that these jobs "entail basically standing or sitting at a workstation. And I don't believe as long as she remains at the work station working, it would make any difference as to whether she was standing or sitting back on a stool while at the work station." (*Id.*). The ALJ then included these jobs in an alternate finding. Thus, even if the ALJ erred in failing to include a limitation concerning the use of an ambulatory device in the RFC,

the Court finds the error is harmless because the ALJ included jobs that allow for an individual to be seated while performing them.

Plaintiff also briefly asserts that the ALJ erred in failing to develop the record as to Plaintiff's use of an assistive device. (Doc. 21 at 14-15). In completing the five-step sequential process, the ALJ has a duty to develop a full and fair record, whether the claimant is represented by counsel or not. *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 741 (11th Cir. 2015) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Nevertheless, the claimant bears the burden of proving that she is disabled and, accordingly, is responsible for producing evidence to support her claim. *Id.* Moreover, remand is required only when:

> "[T]he record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 2015). In other words, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id.* Prejudice requires a showing that "the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

*Id.* at 742. Here, Plaintiff did not demonstrate any evidentiary gaps in the record. Further, Plaintiff did not show that any of Plaintiff's medical providers prescribed the use of a cane or required Plaintiff to use an assistive device to ambulate. Nor can the Court find that the ALJ did not have all of the relevant evidence before him or that he failed to consider the evidence as a whole. Thus, the Court finds that the ALJ did not err in failing to develop the record further.

### 3. Hypertension

Plaintiff argues that the ALJ erred in finding Plaintiff's hypertension a non-severe impairment and further erred in not including any limitations in Plaintiff's RFC related to her hypertension. (Doc. 21 at 15). Plaintiff asserts that the medical records are "replete" with

Plaintiff's many hospitalizations caused by extreme high blood pressure. (*Id.* (citing Tr. at 489, 518, 540, 573, 633, 642, 828-33, 872, 914, 927, 970, 1030)).

The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's hypertension was not a severe impairment and, further, the ALJ considered Plaintiff's non-severe impairments when formulating the RFC. (Doc. 21 at 19).

At step two of the sequential evaluation, the ALJ analyzes the severity of a claimant's impairments. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ is required to consider a claimant's impairments in combination, whether severe or not. *Id.*

> A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities. . . . The determination of whether the claimant suffers from a severe impairment acts as a filter. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, while a claim

is denied if the claimant does not suffer from a severe impairment, the finding of any severe impairment, regardless of whether it qualifies as a disability or results from a single impairment or combination thereof, is sufficient to satisfy the second step of the SSA's sequential analysis. *Id.* Nonetheless, beyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling.

*Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

Here, the ALJ found Plaintiff to have the severe impairments of coronary artery disease, plantar fasciitis, and obesity. (Tr. at 43). Further, the ALJ specifically found:

In addition to the above-listed severe impairments, the claimant was diagnosed with hypertension, diabetes mellitus and a history of CVA. After considering the evidence, I find that these impairments, either alone or in concert with her other impairments, cause no more than a minimal effect on her ability to engage in basic work activity. According to the record, the claimant has a history of medication noncompliance as it relates to her hypertension (3F, 10F, 12F, 13F and 14F). The claimant reportedly fails to check her blood pressure, and she does not consistently take her medications.

(Tr. at 44). Thus, even if the ALJ erred in finding Plaintiff's hypertension a non-severe impairment, the Court finds that the error is harmless because the ALJ considered Plaintiff's severe impairments in combination with her non-severe impairments – including her hypertension – when determining Plaintiff's RFC.

Plaintiff also argues that the ALJ found Plaintiff non-compliant with her treatment by not taking her medications. (Tr. at 15). Plaintiff claims that the ALJ erred in disregarding Plaintiff's limitations stemming from her hypertension impairment "simply because the claimant has not complied with treatment to the ALJ's satisfaction." (Doc. 21 at 16).

The Commission asserts that Plaintiff did not list any limitations Plaintiff has related to her hypertension, nor did Plaintiff point to any medical records that support limitations in her ability to work due to her hypertension. The Court agrees. No doubt Plaintiff's hypertension is a serious condition. However, Plaintiff has not provided any limitations in her ability to work due to this condition, nor has Plaintiff cited to any medical records that support a limitation caused by Plaintiff's hypertension. *See Hubbard v. Comm'r of Soc. Sec.*, 618 F. App'x 643, 650 (11th Cir. 2015) (finding that even though Plaintiff had certain serious medical conditions, the ALJ did not err when not including limitations as to these conditions because the medical records "did not indicate any functional limitations related to those conditions"). Further, this Court has held:

> As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. . . . It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. §§ 404.1512(c); 416.912(c).

*Bear v. Astrue*, 838 F. Supp. 2d 1267, 1273 (M.D. Fla. 2011) (citations omitted). Here, Plaintiff failed to meet her burden of proving limitations in her ability to work due to her hypertension. Accordingly, the Court finds that ALJ did not err by failing to include any limitations in Plaintiff's RFC related to her hypertension.

Finally, Plaintiff claims that the ALJ simply disregarded Plaintiff's limitations stemming from her hypertension impairment because Plaintiff had not complied with her treatment to the ALJ's satisfaction. (Doc. 21 at 15-16). Plaintiff claims that some of her non-compliance was due to her inability to afford her medication. (*Id.* at 16).

The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability, but poverty excuses noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citation and quotation omitted). If a

plaintiff fails to comply with prescribed treatment, then the ability to afford medication is a factor that should be considered in the administrative process. SSR 16-3P, 2016 WL 1119029, at *9 (Mar. 16, 2016). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275.

In this case, the ALJ noted Plaintiff's non-compliance with medications and treatment throughout the decision. (*See* Tr. at 44, 48). But as stated above, even if the ALJ noted this non-compliance, the Court finds Plaintiff failed to indicate any limitations in her ability to work that she experienced due to her hypertension. Thus, the Court finds substantial evidence supports the ALJ's determination as to Plaintiff's RFC.

**B.     Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Mental Impairments**

Plaintiff asserts that the ALJ found Plaintiff had a learning disability that was not a medically determinable impairment, but nonetheless found Plaintiff had mild limitations in functioning due to her non-medically determinable mental impairment. (Doc. 21 at 22-23). Plaintiff claims that the ALJ "is prohibited from considering symptoms and limitations arising from" non-medically determinable mental impairments. (*Id.* at 23). Plaintiff then argues that the ALJ "suspected" Plaintiff had a learning disability, but admitted there was no available medical evidence and, thus, should have ordered a consultative examination. (*Id.*).

The Commissioner argues that while the ALJ is not required to consider non-medically determinable impairments after step two, Plaintiff did not cite to any authority that forecloses an ALJ from considering these impairments. (*Id.* at 24). Further, the Commissioner contends that

even if the ALJ erred in considering Plaintiff's non-medically determinable impairments and included additional limitations in the RFC due to these limitations, the error is harmless. (*Id.*).

At step three, to meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The Listings of Impairments in the Social Security Regulations identifies impairments that are considered severe enough to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, subpt. P, app. 1.

At the hearing, Plaintiff testified that she was in special education classes while in school. (Tr. at 68). She also testified that she can read and write, "[j]ust a little bit." (*Id.* at 61). The ALJ cited to Plaintiff's testimony that she suffers from a learning disability, but determined that there was "little evidence to show that this is a medically determined impairment." (*Id.* at 44). The ALJ noted that Plaintiff left school for reasons other than her learning disability. (*Id.*). Nonetheless, the ALJ included a limitation in Plaintiff's RFC that she "is further limited to mostly oral or low-level written instructions." (*Id.* at 46).

Here, even though the ALJ found Plaintiff's learning disabilities were not a medically determined impairment, the ALJ included limitations in Plaintiff's RFC based upon Plaintiff's testimony that she has learning disabilities. Stated another way, the ALJ included *additional limitations* in Plaintiff's RFC. Plaintiff appears to be arguing the ALJ erred by including these additional limitations. Even if the ALJ erred, Plaintiff has not shown she was harmed by the inclusion of these additional limitations. Accordingly, the Court finds that even if the ALJ erred – which the Court does not find here – the error was harmless.

Plaintiff also argues that the ALJ erred by not ordering a consultative examination as to Plaintiff's learning disability. (Doc. 21 at 23). Plaintiff claims that the ALJ was required to

order a consultative examination to make an informed decision concerning Plaintiff's learning disability.  (*Id.*).

The Commissioner responds that the ALJ considered the medical evidence as a whole, including psychological examinations and, based on this review, the ALJ was under no obligation to order a consultative examination.  (*Id.* at 24-25).

An ALJ is not required to order a consultative examination "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).  In addition, a plaintiff must show prejudice before a court will find that a plaintiff's "'right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.'"  *Brown*, 44 F.3d at 934-35 (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).  To determine if prejudice exists, the Court must determine if the record contains evidentiary gaps that will result in unfairness or clear prejudice.  *Id*. at 935 (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).

Here, Plaintiff bears the burden of producing relevant medical evidence to show that she has functional limitations.  *Bear*, 838 F. Supp. 2d at 1273.  Plaintiff testified as to a learning disability, but did not cite to any medical records that mention this alleged disability or that this disability caused Plaintiff any limitations in her ability to work.  (Tr. at 61, 68).  In fact, some of the medical records showed that upon a psychological evaluation, Plaintiff was alert, oriented x3, and had normal effect and normal mood.  (*Id.* at 643, 928).  The Court finds that Plaintiff did not meet her burden and did not demonstrate that the ALJ had insufficient evidence of record to make an informed decision concerning Plaintiff's alleged learning disability.  *See Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007) ("As this court has explained, the ALJ need not

order an additional consultative examination where the record was sufficient for a decision."). Accordingly, the Court finds that the ALJ did not err when he did not order a consultative examination.

### C. Whether the ALJ's Assessment of Plaintiff's Credibility Is Supported by Substantial Evidence

Plaintiff asserts that the ALJ found Plaintiff to be generally honest and credible. (Doc. 21 at 27). Plaintiff then asserts that the ALJ found Plaintiff capable of performing light work because she lives alone and performs routine and mundane daily activities. (*Id.*). Plaintiff argues that these activities are not sufficient to discredit her testimony. (*Id.*). Finally, Plaintiff argues that even through the ALJ acknowledged Plaintiff's heart problems, he erroneously discredited her testimony by finding that objective testing showed negative results. (*Id.*).[3]

The Commissioner asserts that when evaluating Plaintiff's RFC, the ALJ considered Plaintiff's statements about her symptoms and the limitations they caused. (*Id.* at 28). The Commissioner argues that the ALJ properly found Plaintiff's statements were not entirely credible, noting that Plaintiff's daily activities did not demonstrate that "she was incapable of performing a reduced range of light work." (*Id.* at 29). Lastly, the Commissioner asserts that the ALJ noted that the objective findings do not support Plaintiff's statements, Plaintiff received "relatively conservative treatment for her impairments," and Plaintiff was stable when she took her medications. (*Id.* at 29-30).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical

---

[3] Plaintiff also raises the issue of Plaintiff's medication non-compliance as an insufficient reason to discredit Plaintiff. (Tr. at 27). As explained in above and in section II.A.2, *supra*, , the Court finds that the ALJ did not rely on noncompliance with prescribed medical treatment as the sole ground for denial of benefits. *See Ellison*, 355 F. 3d at 1275.

condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).[4]

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

---

[4] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p explains that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* Here, the ALJ rendered his decision on February 20, 2015. (Tr. at 51). Thus the new regulations were not in effect at that time.

Here, the ALJ found that the medical evidence shows that Plaintiff's physical impairments are severe, but the evidence failed to show that these impairments create limitations that prevent Plaintiff from working at a light level. (Tr. at 48). The ALJ assessed Plaintiff's statements and testimony regarding the limiting effects of her impairments in great detail as follows:

> I have also assessed the claimant's statements and testimony regarding the limiting effects of her impairments, and I find them to be generally honest and credible; however, the record does not provide that she is so impaired that she would be incapable of performing work at the light level. In determining the credibility of the individual's statements, I must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record (SSR 96-7p). Understandably, the claimant has concerns regarding the effects of her impairments; however, her reported activities and hearing demeanor belie a finding of disability. The claimant's testimony did not reflect the findings contained in objective medical records. During the hearing, the claimant presented as responsive, honest and generally credible; however, the claimant's testimony and general activities do not corroborate her allegations. According to the claimant, she lives alone and has little difficulty managing her daily activities. Moreover, the claimant testified to memory problems and symptoms that were beyond those suggested by the medical records, and her own estimates were beyond the residual functional capacity. The evidence does show that that the claimant has health problems; however, objective testing showed negative findings (Ex. 5F). Furthermore, the claimant has a history of medication noncompliance, even as she reported certain side effects. However, the evidence also shows that when she is compliant, her symptoms are generally stable.
>
> The evidence shows that the claimant's symptoms limit her functional abilities. This is borne by the opinions, treatment notes and testimony. However, in any application for benefits before the Social Security Administration, the claimant ultimately bears the burden of proof to provide evidence that supports his or her assertions regarding the limiting effects of their impairments (SSR 88-3c). Given the evidence presented in this case, as well as the claimant's age and vocational factors, I find that there is simply not enough evidence to suggest a greater level of restriction than could be shown by objective medical findings. The claimant's testimony at the hearing provides some context to her treatment, as well as the symptoms associated with her impairments; however, her testimony does little to suggest a greater limitation than that shown by the objective medical evidence, and the allowances provided by the residual functional capacity.

(*Id.*).

The Court finds that the ALJ provided an in-depth analysis of Plaintiff's subjective symptoms and considered them thoroughly in the decision. The ALJ considered Plaintiff's daily activities, the nature and intensity of Plaintiff's symptoms, any precipitating and aggravating factors, the effects of Plaintiff's medications, her treatment for her conditions, and the medical record as a whole. (*Id.* at 46-49). The ALJ acknowledged that Plaintiff's symptoms limited her functional abilities and supported this statement by a review of the opinions, treatment notes, and testimony. (*Id.* at 48). Further, the ALJ explained that Plaintiff bears the burden of proof to produce evidence to support her assertions of the limited effects of her impairments and, in this case, the ALJ found, "there is simply not enough evidence to suggest a greater level of restriction than could be shown by objective medical findings." (*Id.* at 49).

Further, the ALJ found that Plaintiff's testimony at the hearing provided context to her treatment, but did "little to suggest a greater limitation than that shown by the objective medical evidence." (*Id.*). The ALJ credited some of Plaintiff's subjective symptoms as evinced by the limitations in the RFC and provided clearly articulated reasons supported by substantial evidence of record to reject some of Plaintiff's other subjective symptoms. Accordingly, the Court finds that the ALJ did not err in his subjective symptom determination and this determination is supported by substantial evidence.

Plaintiff specifically takes issue with the ALJ's statement that "[t]he evidence does show that [sic] the claimant has heart problems; however, objective testing showed negative findings." (Doc. 21 at 27-28 (citing (Tr. at 48)). Plaintiff claims that the record established that Plaintiff has significant right coronary artery stenosis. (Doc. 21 at 28).

The Commissioner asserts that the evidence showed that while Plaintiff had heart disease, this impairment did not limit her ability to work as alleged. (*Id.* at 30). Further, the Commissioner argues that because the evidence does not fully support Plaintiff's complaints concerning her symptoms, the ALJ properly found those complaints not credible. (*Id.*).

The Court finds that the ALJ properly considered the record and noted that Plaintiff had coronary problems. (*See id.* at 47). The ALJ did not determine, as Plaintiff alleges, that Plaintiff's coronary issues were normal. (Doc. 21 at 28). Rather, the ALJ acknowledged that Plaintiff has heart problems, but noted that objective testing showed negative findings. (Tr. at 48). For example, the results of Plaintiff's cardiac catheterization showed moderate right coronary artery disease, but the results were "not significant functionally," and left renal artery stenosis, but will need "intervention later on." (Tr. at 47, 791). Plaintiff also underwent a nuclear stress test and the findings were "essentially negative." (*Id.* at 970). Further, Plaintiff was asymptomatic. (*Id.*). Thus, the Court finds that the ALJ did not err in finding Plaintiff had heart problems, but objective testing showed negative findings. (*Id.* at 48).

Accordingly, the Court finds that the ALJ did not err in considering Plaintiff's subjective symptoms and substantial evidence supports the ALJ's decision.

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

Accordingly, it is hereby **ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on August 14, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties